FILED
U.S. DISTRICT COURT
EASTERN DISTRICT ARKANSAS
FEB 0 9 2022
TAMMY H. DOWNS, CLERK
By:_____
DEP CLERK

Thomas Crockett #80478
Maximum Security Unit
2501 State Farm Rd.
Tucker, AR 72168
Pro Se

4:22-cv-00126-BRW-JTK

This case assigned to District Judge ___Wilson___
and to Magistrate Judge ___Kearney___

United States District Court
Eastern District of Arkansas
Central Division

Thomas Crockett #80478,
                    Plaintiff

            vs.

Dexter Payne, Director of the
Arkansas Division of Correction;
Tabitha Crater, Program Specialist,
Maximum Security Unit,
                    Defendants

Case No.

Verified Complaint
For Declaratory
And Monetary
Relief

Jury Trial Demanded

1

# Introduction

(1) Thomas Crockett is a prisoner in the Maximum Security Unit in Tucker, Arkansas, which is a part of the Division of Correction.

(2) On September 16, 2021, Plaintiff received a disciplinary for allegedly working in tandem with 2 other incarcerated persons to engage in online financial transactions that the Division of Correction deemed violative of ADC policy. Plaintiff was not named in the body of the disciplinary, but his wife's was.

(3) Defendant Tabitha Crater is the Administrative Review Officer (ARO) at the Maximum Security Unit. Part of her job description and duties entail monitoring inmate calls on the phone system. It was during the monitoring of a call of another

2

incarcerated person that Plaintiff's wife's name was mentioned. Specifically, Plaintiff's wife's CashApp designation was mentioned. As a result of additional investigation by Ms. Crater, the CashApp designation of his wife was developed. Plaintiff was written a disciplinary by Defendant Crater solely on the basis of his wife's name being involved in a telephone discussion. Plaintiff was never conclusively tied to any of the transactions nor was he mentioned as a participant.

(4) Consequently, as a result of a disciplinary conviction, Plaintiff was reduced to Class 4, he forfeited 365 days of good time, and lost privileges of commissary, phone, and visitation for a period of 60 days. He

3

Was also confined in punitive isolation for 30 days. On top of all of this, Plaintiff and his wife lost $200 worth of video visits that are non-refundable and she was removed from his visitation list.

(5) Plaintiff seeks declaratory relief and monetary relief for intentional infliction of emotional distress. He also seeks to have his disciplinary expunged from his inmate file and to be reimbursed for the $200 worth of video visits.

## I. Jurisdiction and Venue

(6) This is an action for declaratory and monetary relief arising under the First and Fourteenth Amendments to the U.S. Constitution, and 42 U.S.C. Section 1983.

(7) This Court has federal question jurisdiction over Plaintiff's claims of violations

4

of the U.S. Constitution pursuant to 28 U.S.C.
Section 1331 and 42 U.S.C. Section 1983.

(8) Plaintiff's claims for declaratory relief
are sought under 28 U.S.C. Sections 2201 and
2202, 28 U.S.C. Section 1343 and the general
legal and equitable powers of this Court.

(9) Plaintiff's claims for monetary relief
are sought under the First and Fourteenth
Amendments to the U.S. Constitution and
42 U.S.C. Section 1983.

(10) Plaintiff's claims for attorneys' fees
and costs are predicated upon 42 U.S.C.
Section 1988, which authorizes the award
of attorneys' fees and costs to prevailing parties
under 42 U.S.C. Section 1983.

(11) This Court has personal jurisdiction over
Defendants because Defendants reside and
conduct business in the State of Arkansas.

5

(12) Venue is proper under 42 U.S.C. Section 1391 because all Defendants operate within the geographical boundaries of the State of Arkansas, and a substantial part of the acts described herein occurred within this district.

## II. Plaintiff

(13) Plaintiff is and was at all times mentioned herein a prisoner within the custody of the Arkansas Division of Correction. He is currently housed at the Maximum Security Unit in Tucker, Arkansas.

## III. Defendants

(14) Defendant Dexter Payne is the Director of the Division of Correction. He is the ultimate decision-maker with the authority to approve all DOC policies, procedures, and operations, including disciplinary procedures. He

6

also has the authority to order that all
employees follow state and federal law,
including the Arkansas and United States
Constitutions. Defendant Payne also is the
final decision-maker in the disciplinary appeal
process and has the obligation to investigate
appellate claims. Defendant Payne is being
sued in his official and individual capacity.

(15) Defendant Tabitha Crater is the
Administrative Review Officer (ARO) at the
Maximum Security Unit. Part of her job
duties include monitoring inmate phone calls
for possible policy violations warranting
disciplinary action and for any violations of
state or federal law. Defendant Crater
has an obligation to investigate fully before
subjecting an incarcerated person to
disciplinary action. Defendant Crater is being
sued in her official and individual capacity.

7

## IV. Exhaustion Of Legal Remedies

(16) Plaintiff has exhausted all available legal remedies as to each person and all issues (Exhibit 1) and has exhausted all disciplinary appellate remedies. (Exhibit 2)

## V. Facts

(17) On September 16, 2021, Plaintiff was written a disciplinary by Tabitha Crater. (Exhibit 3) In the body of the disciplinary, it alleged that one incarcerated person, Kendrix Heard, was overheard discussing various financial transactions with a female named Monica Nichols in a phone conversation that was monitored by Defendant Crater. In that conversation, several people's names were mentioned, both incarcerated and not. CashApp notations were discussed, including Plaintiff's wife's, Ramona Crockett. At no time was Mr. Heard ever discussing Plaintiff.

8

(18) Nevertheless, Plaintiff was written a disciplinary for what is commonly known as trafficking and trading and possession or movement of money. Consequently, Plaintiff was found guilty of these charges and received sanctions of reduction in class from 1 to 4; 30 days of punitive isolation; 60 days loss of all phone, visitation, and commissary privileges and loss of 365 days of good time. (Exhibit 4)

(19) Additionally, as a collateral consequence, Plaintiff's wife was removed from his approved visitation and phone lists and he lost over $200 of scheduled video visits that are non-refundable.

(20) Despite the fact that there was no evidence presented in the body of the disciplinary that tied Plaintiff to any of

the activities described, the guilty finding was upheld all the way to the highest levels of ADC administration. (Exhibit 5)

## VI. Legal Claims

(21) Plaintiff realleges and reincorporates by reference Paragraphs 1-20 as if argued here.

(22) The failure of Ms. Crater to do any type of investigation before subjecting Plaintiff to disciplinary action resulted in a myriad of constitutional violations as discussed below.

### (A) The Failure Of Defendant Crater To Properly Investigate Has Resulted In A Violation Of Plaintiff's Procedural Due Process Rights Under The Arkansas And U.S. Constitutions

(23) The Due Process Clause of the

10

Fourteenth Amendment prohibits state governments from depriving "any person of life, liberty, or property, without due process of law..." (See U.S. Const. amend. XIV, Section 1) "This clause has two components: the procedural due process and the substantive due process components." (See Singleton vs. Cecil, 176 F.3d 419, 8th Cir. 1999) (en banc) (citing Cnty. of Sacramento vs. Lewis, 523 U.S. 833, 1998) "Analysis of either a procedural or substantive due process claim must begin with an examination of the interest allegedly violated, and the possession of a protected life, liberty, or property interest is a condition precedent to any due process claim." (Id.) (quotation marks, alterations, and citations omitted.) Substantive due process rights are created only by the Constitution,

11

while procedural due process rights can be created by either state law or the Constitution. (Id.)

(24) "A liberty interest may arise from the Constitution itself, by reason of guarantees implicit in the word "liberty" or it may arise from an expectation or interest created by state law or policies." (See Wilkinson vs. Austin, 545 U.S. 209, 2005) But while a State-created liberty interest may be "entitled to the procedural protections of the Due Process Clause of the Fourteenth Amendment" (See Van Orden vs. Stringer, 937 F.3d 1162, 8th Cir. 2019) cert denied sub nom, Orden vs. Stringer, 2020 WL 873175, (Feb. 24, 2020), a state-created liberty interest cannot form the basis of a substantive due process claim, (See Forrester vs. Bass, 397 F.3d 1047, 8th Cir. 2005)

(25) In Sandin vs. Conner, 515 U.S. 472 (1995),

12

the United States Supreme Court ruled that prisoners should only be found to have liberty interests in 3 circumstances; (a) when the right at issue is independently protected by the Constitution; (b) when the challenged action causes the prisoner to spend more time in prison or (c) when the action imposes "atypical and significant hardships on the inmate in relation to the ordinary incidents of prison life." (Id. at 497)(Breyer, J., dissenting) It is the second prong of <u>Sandin</u> that is at issue here.

(26) Once an inmate is found guilty and good time is forfeited, the inmate's length of confinement has been extended. Under this scenario, if prison staff provide the procedures set forth in <u>Wolff vs. McDonell</u>, the inmate would be entitled to bring a

13

challenge since a liberty interest existed and an "atypical and significant hardship" was imposed, i.e. extension of length of sentence. (See cf. Superintendent, Massachusetts Correctional Institution, Walpole vs. Hill, 472 U.S. 445, 1985- "revocation of good time does not comport with 'the minimum requirements of procedural due process'.....unless the findings of the prison disciplinary board are supported by some evidence in the record") (citation omitted)

(27) In this case, Plaintiff was assessed a sanction of the loss of 365 good time days, (Exhibit 4) There was no evidence that Plaintiff was involved in the transactions discussed by Mr. Heard. He was implicated by inference based on the fact that Plaintiff's wife's Cash App designation was discussed,

Nothing in the body of the disciplinary links Plaintiff to any wrongdoing. It certainly does not rise to the level of the "same evidence" standard. Plaintiff's procedural due process rights were violated pursuant to the Arkansas and United States Constitutions when 365 days of good time were taken from him when no evidence linked him to any of the financial transactions. Defendant Payne also contributed to these violations by failing to correct the problem when afforded the opportunity. Therefore, Plaintiff suffered an atypical and significant hardship as a result.

(B) The Disciplinary Charge Did Not Rise To The Level Of The "Some Evidence" Standard, Therefore It Was Wrongly Decided

(28) In Superintendent vs. Hill, 472 U.S, 454,

the United States Supreme Court stated
that "the minimum requirements of procedural
due process" require that "the findings
of the prison disciplinary board be supported
by some evidence in the record." (Id. at 454-
55) This standard is the lowest possible
standard of review. (See Ryan vs. Sargent, 969
F.2d 638, 8th Cir. 1992)

(29) In this case, there is not "some evidence"
to connect Plaintiff to any wrongdoing. There
is not even the "meager evidence" standard
discussed in Hill. The disciplinary narrative
mentions Plaintiff a grand total of 1 time
and that is when the Defendant Crater
said that Plaintiff was the husband of
Ramona Crockett. Ramona Crockett's name
entered the discussion when Mr. Heard
mentioned her Cash App designation. Plaintiff's

16

wife sells essential oils online. (See Essential Oils, Cures and Spoils on Facebook ●).my.Doterra.com/Ramona Crockett) It is entirely possible that Monica Nichols had purchased items from his wife and that is what was being discussed. In fact, it is the only logical explanation. In reality, the disciplinary narrative never connects Mrs. Crockett to any nefarious activity. Yet, Defendant Crater made a presumption that was entirely divorced from logic and common sense when she disciplined the Plaintiff for his wife's Cash App designation being discussed in a telephone conversation. The sky was not falling just because Defendant Crater said it was.

(30) As a result of the same evidence standard being nonexistent, Plaintiff's procedural due process rights were violated during the major disciplinary proceeding.

17

Defendant Payne compounded the violation by not correcting the problem when he had the opportunity to do so.

### (C) Plaintiff's Procedural Due Process Rights Were Violated When He Was Not Provided With A Copy Of The Phone Call Or A Transcript Of It.

(31) An inmate has a limited due process right to examine, or have produced at the hearing, documents in the possession of prison officials that may help to determine whether the inmate is guilty or not. (See e.g. Holt vs. Caspari, 961 F.2d 1370, 8th Cir. 1991)

(32) In this case, Defendant Crater relied on a recorded telephone conversation to justify the writing of the disciplinary that is the subject of this suit. Yet, Defendant Crater did

18

not provide Plaintiff a copy of the recording
or a transcript of it so that he could prepare
his defense. Due to the call being the
sole evidence against him, it was imperative
that Plaintiff be provided with a transcript
of that hearing. Because it was not, Plaintiff's
procedural due process rights were violated.
(See Muhammad vs. Butler, 655 F.Supp. 1470,
D.N.J. 1987-hearing officer's refusal to allow the
inmate to hear taped telephone recording or
even to see a transcript of the call inmate
made did not pass constitutional muster, and
that the inmate's "right to present a defense
was clearly abridged by his inability to review
these statements"; Young vs. Kann, 926 F.2d
1396, 3d Cir. 1991-inmate charged with writing
a threatening letter should have been permitted
to see the letter, and the hearing officer
should have read the letter rather than

relying on a description of it in the disciplinary report.)

(33) Defendant Payne compounded the violation by not correcting the finding.

### (D) Plaintiff's First Amendment Associational Rights Were Violated By The Major Disciplinary Proceeding

(34) The United States Supreme Court has declared that the First Amendment encompasses a right to "association with others in pursuit of a wide variety of political, social, economic, educational, religious, and cultural ends." (See Day vs. Board of Regents Of The University of Nebraska, 911 F.Supp, 1228, D.Neb, 1995) (quoting Roberts vs. United States Jaycees, 468 U.S 609, 1984) The Supreme

Court has afforded constitutional protection to freedom of association in two distinct senses, one of which applies here', unjustified government interference with an 'individual's choice to enter into and maintain certain intimate or private relationships. (See <u>Board of Dirs, of Rotary Int'l vs. Rotary Club</u>, 481 U.S, 537, 1987)

(35) The marriage relationship is the epitome of the private relationship mentioned above. Marriages must be nurtured in order for them to survive, especially in the correctional context where distance and time can inexorably wear one down. As a result of the disciplinary sanctions imposed in this case, Plaintiff's wife was removed from his approved visitation and phone list, Plaintiff and his wife were also robbed of $200 worth of scheduled video visits, which are non-refundable,

(36) The false disciplinary charge and

resulting sanctions violates Plaintiff's First Amendment right to "maintain certain intimate or private relationships", in this case, the marriage relationship. To add insult to injury, due to Covid restrictions in place, the latest round of sanctions effectively makes communication between Plaintiff and his spouse non-existent.

(37) Director Payne compounded the First Amendment violation by not correcting the false disciplinary report and by not ordering Plaintiff's wife to be restored back to his approved phone and visitation list.

(38) Declaratory and monetary relief is appropriate.

### Count I - Willful and Wanton

(39) Plaintiff realleges and reincorporates by reference herein paragraphs 1-38 as if argued here.

(40) Defendants maintained a course

of action by writing a disciplinary that Defendant Crater knew to be false and failed to adequately investigate the facts before so doing. Defendant Payne failed to investigate once the disciplinary appeal landed on his desk. If he had properly investigated, he would have determined that Plaintiff did not commit the offenses. He would have restored Plaintiff's class status and privileges and would have expunged the disciplinary from his inmate file.

(41) Defendants were aware of all of the collateral consequences that would result from a false disciplinary conviction. Defendants recklessly disregarded the consequences of those actions.

(42) Plaintiff is entitled to declaratory and monetary relief for the willful and

wanton conduct of the Defendants,

Count II - Violation Of First
And Fourteenth Amendments
To The United States
Constitution,

(43) Plaintiff hereby realleges and
reincorporates by reference herein paragraphs
1-42 as if fully set forth herein.

(44) The First Amendment to the U.S.
Constitution provides "Congress shall make
no law respecting an establishment of
religion, or prohibiting the free exercise
thereof, or abridging the freedom of speech..."
The Free Speech Clause, which encompasses
the right of association, applies with full
force and effect to the acts of state and
local government entities and officials
pursuant to the Due Process Clause of

24

the 14th Amendment of the U.S. Constitution.
The Fourteenth Amendment to the U.S.
Constitution states in pertinent part; No State
shall deprive any person of the rights of
life, liberty, or property, without due process
of law.

(45) When Plaintiff's wife was removed
from his approved visitation and phone lists,
his right to "maintain certain intimate or
private relationships" was violated and abridged
by the false disciplinary report, When both
Defendants failed to investigate pre and
post conviction Plaintiff's claims of actual
innocence of the offense, his procedural
due process rights were violated. When the
telephone call transcript was not provided
to the Plaintiff so that he could prepare
his defense, his procedural due process
rights were violated.

(46) Plaintiff has no plain, adequate, or complete remedy at law to address the wrongs described herein, Plaintiff has been and will continue to be irreparably injured by the conduct of the defendants unless this court grants the declaratory and monetary relief which Plaintiff seeks.

## VII. Prayer For Relief

(47) Plaintiff requests that this Court enter judgment in his favor and against the Defendants on each and every count in this Complaint and issue an order awarding the following relief:

(a) Issue a declaration that the acts and omissions described herein violated Plaintiff's rights under the Constitution and laws of the United States;

(b) Award compensatory damages in an amount to be determined at trial;

(c) Award punitive damages in an

amount to be determined at trial;

(d) Set a jury trial on all issues triable by jury;

(e) Award reasonable attorneys fees and costs;

(f) Order that Plaintiff be reimbursed the $200.00 in non-refundable video visits, and

(g) Award any additional relief this Court deems just, proper, and equitable.

Date: 12-3-22

Respectfully submitted,

Thomas Crockett #80478
Maximum Security Unit
2501 State Farm Rd,
Tucker, AR 72168

27

# Verification

I verify that the foregoing is true and correct to the best of my knowledge, except as to matters based upon information and belief, and as to those, I believe them to be true under penalty of perjury,

Signed; Q. E. Crockett

Date; 2-3-22

Executed at; Tucker, Arkansas

**UNIT LEVEL GRIEVANCE FORM** (Attachment I)  RECEIVED

Unit/Center _Maximum Security_

Name _Thomas Crockett_                    JAN 2 5 2022

ADC# _80478_  Brks # _2-26_  Job Assignment _____
INMATE GRIEVANCES SUPERVISOR

_1-3-22_ (Date) STEP ONE: Informal Resolution    ADMINISTRATION BUILDING

FOR OFFICE USE ONLY
GRV. # _MX-22-00095_
Date Received: _1-6-22_
GRV. Code #: _400_

_1-3-22_ (Date) STEP TWO: Formal Grievance (All complaints/concerns should first be handled informally.)
If the issue was not resolved during Step One, state why: _Issue not resolved_
_disciplinaries are within the purview of the Department_
_____, (Date) EMERGENCY GRIEVANCE (An emergency situation is one in which you may be subject to
a substantial risk of physical harm: emergency grievances are not for ordinary problems that are not of serious
nature). If you marked yes, give this completed form to the designated problem-solving staff, who will sign the
attached emergency receipt. In an Emergency, state why: _____

_Is this Grievance concerning Medical or Mental Health Services?_ _N_ _If yes, circle one: medical or mental_
**BRIEFLY** state your one complaint/concern and be specific as to the complaint, **date**, place, name of personnel
involved and how **you** were affected. (Please Print): _I was recently written a_
_disciplinary for allegedly being involved in an online_
_financial transaction with 2 other individuals. My name was_
_never mentioned in the body of the disciplinary, rather_
_my wife's name was, I was implicated by inference. I was_
_penalized for this. Aside from the fact that the disciplinary_
_form is not the proper form, my procedural due process/_
_rights were violated by the writing of the disciplinary because_
_(1) probable cause was not adhered to in the writing of it by not_
_tying me directly to the transaction in the body of the narrative_
_and (2) no proper investigation was conducted to determine_
_what my involvement was. Ms. Crater just categorically_
_determined that I was the guilty party due to my wife's_
_name being seen online and another inmate referencing it._
_As a result, my 14th Amendment procedural due process rights were violated_

_Thomas Crockett_                    _1-3-22_
Inmate Signature                        Date

_If you are harmed/threatened because of your use of the grievance process, report it immediately to the Warden or designee._

**THIS SECTION TO BE FILLED OUT BY STAFF ONLY**
This form was received on _1-3-22_ (date), and determined to be **Step One** and/or an Emergency Grievance
_NO_ (Yes or No). This form was forwarded to medical or mental health? _NO_ (Yes or No) If yes, name
of the person in that department receiving this form: _____ Date _____
_Sgt V_         _3120_       _Sgt V_    FAILURE TO FOLLOW _1-3-22_
PRINT STAFF NAME (PROBLEM SOLVER)  ID Number  Staff Signature  POLICY HAS RESULTED Date Received
Describe action taken to resolve complaint, including **dates**:  A REJECTION FOR THIS
_Disciplinaries are none grievable._       APPEAL AND MARKS THE END
                                            OF THE APPEAL PROCESS

Staff Signature & Date Returned _Sgt V  1-3-22_ Inmate Signature & Date Received _V Crockett 1-3-22_
This form was received on _1-3-22_ (date) pursuant to **Step Two**. Is it an Emergency? _NO_ (Yes or No).
Staff Who Received Step Two Grievance: _Sgt V_            Date: _1-3-22_
Action Taken: _Forward to Sgt V_ (Forwarded to Grievance Officer/Warden/Other) Date: _1-3-22_
If forwarded, provide name of person receiving this form: _____ Date: _____

-------------------------------------------------------------------------

**DISTRIBUTION: YELLOW & PINK** - Inmate Receipts; **BLUE** - Grievance Officer; **ORIGINAL** - Given back
to Inmate after Completion of Step One and Step Two.

ADCF-15

IGTT405
3GT

FAILURE TO Attachment V
POLICY HAS RESULTED IN
REJECTION FOR THIS
APPEAL AND MARKS THE END
OF THE APPEAL PROCESS

## ACKNOWLEDGEMENT OF GRIEVANCE APPEAL
## or REJECTION OF APPEAL

TO:   Inmate   Crockett, Thomas E.          ADC #:  080478A
FROM:  Straughn, William F                  TITLE:  Assistant Director (ADC)
RE: Receipt of Grievance  MX-22-00025   DATE:  01/25/2022

Please be advised, the appeal of your grievance dated
01/03/2022
was received in my office on this date   01/25/2022

**Your grievance appeal is being returned pursuant to the Administrative Directive on Inmate Grievances due to one of the following:**

☐  The time allowed for appeal has expired
☑  The matter is non-grievable and does not involve retaliation:
   ☐  (a) Parole and/or Release matter
   ☐  (b) Transfer
   ☐  (c) Job Assignment (Unrelated to Medical Restriction)
   ☑  (d) Disciplinary matter
   ☐  (e) Matter beyond the Division's control and/or matter of State/Federal law
   ☐  (f) Involves an anticipated event
   ☐  (g) Publication
☐  You did not send all the proper Attachments:
   ☐  (a) Unit Level Grievance Form (Attachment 1)
   ☐  (b) Warden's/Center Supervisor's Decision (Attachment III); or Health Services Response (Attachment IV for Health Issues Only)
   ☐  (c) Acknowledgement and/or Rejection form (Attachment II)
   ☐  (d) Step Two was appropriately rejected
   ☐  (e) Did not give reason for disagreement in space provided for appeal
   ☐  (f) Did not complete Attachment III or IV by signing your name, ADC#, and/or the date
   ☐  (g) Unsanitary form(s) or documents received
☐  This Appeal was REJECTED because it was a duplicate of  , or was frivolous or vexatious

IGTT400                                                                     Attachment II
3GR

# ACKNOWLEDGMENT OR REJECTION OF UNIT LEVEL GRIEVANCE

TO: Inmate   Crockett, Thomas E.          ADC #:   080478A
FROM:   Mena, Mary S                      TITLE:   ADC Inmate Grievance Coord
DATE:   01/06/2022                        GRIEVANCE #:   MX-22-00025

Please be advised, I have received your Grievance dated 01/03/2022 on 01/06/2022 .
Your grievance was rejected as either non-grievable, untimely, duplicate, frivolous, or vexatious.

_M. Mena_

**RECEIVED**

**JAN 25 2022**

**INMATE GRIEVANCES SUPERVISOR**
**ADMINISTRATION BUILDING**

_FAILURE TO FOLLOW POLICY HAS RESULTED IN A REJECTION FOR THIS APPEAL AND MARKS THE END OF THE APPEAL PROCESS_

Signature of ADC Inmate Grievance Coord

## CHECK ONE OF THE FOLLOWING

- ☐ This Grievance will be addressed by the Warden/Center Supervisor or designee.
- ☐ This Grievance is of a medical nature and has been forwarded to the Health Services Administrator who will respond.
- ☐ This Grievance involves a mental health issue and has been forwarded to the Mental Health Supervisor who will respond.
- ☐ This Grievance has been determined to be an emergency situation, as you so indicated.

- ☐ This Grievance has been determined to not be an emergency situation because you would not be subject to a substantial risk of personal injury or other serious irreparable harm. Your Grievance will be processed as a Non-Emergency.
- ☐ This Grievance was REJECTED because it was either non-grievable ( _Disciplinary matter_ ), untimely, was a duplicate of  , or was frivolous or vexatious.

## INMATE'S APPEAL

If you disagree with a rejection, you may appeal this decision within five working days by filling in the information requested below and mailing it to the appropriate Chief Deputy/Deputy/Assistant Director. If you do not receive communication regarding your grievance by the date listed above, you may move to the next level of the process. To do so, indicate in the Inmate's Appeal Section below that you did not receive a response and mail it to the appropriate Chief Deputy/Deputy/Assistant Director within five working days. Keep in mind that you are appealing the decision to reject the original complaint. Address only the rejection; do not list additional issues, which were not a part of your original grievance as they will not be addressed. Your appeal statement is limited to what you write in the space provided below. _Disciplinary matters are well within the purview of the Division of Correction. They are assigned a grievance code. The writing of disciplinaries that have no foundation are grievable as well. It was written based on supposition and conjecture. I also have to exhaust my remedies before seeking court intervention._

_T. E. Crockett_                          ADC#:   080478   Date   01-07-22
Inmate Signature

If appealing a rejection, please include both the Unit Level Grievance
Form (Attachment I) and the Rejection (Attachment II)

IGTT400                          Page 1 of 1

Exhibit 2
86483

F-831-4
**Major Disciplinary Appeal Form**

Inmate Name  Crockett, Thomas   ADC# 80478

Unit/Center  MSU   Punitive Isolation  ✓ Yes _____ No

Disciplinary (date)  09-16-21 by (charging officer)  T. Crater

09/22  **Appealed to Warden/Center Supervisor:** Note, if you do not agree with the decision of the Disciplinary Hearing
Date  Officer, you have 15 business days from receipt of disciplinary action to appeal to the Warden/Center Supervisor.
**Warden's Decision:** Affirm _____ Reverse _____ Modify _____ (See attached if modified)
Signature: _____ Date _____

9/29/21  **Appealed to Disciplinary Hearing Administrator:** Note, if you do not agree with the response of the Warden/Center
Date  Supervisor, you may appeal within 15 business days from receipt of the Warden/Center Supervisor's response to the
Disciplinary Hearing Administrator.
**DHA's Decision:** Affirm _____ Reverse _____ Modify _____ (See attached if modified)
Signature: _____ Date _____

11-02-21  **Appealed to Director:** Note if you do not agree with the Disciplinary Hearing Administrator's response, you may
Date  appeal within 15 business days from receipt of the Disciplinary Hearing Administrator's decision to the Director.
**Director's Decision:** Affirm _____ ✓ _____ Reverse _____ Modify _____ (See attached if modified)
Signature: _____ Date 12/1/21

**Notice to Inmate:** This form is to be used for all appeal levels and responses. Briefly state
reasons why conviction or punishment should be reversed or modified. This information
will be considered at all three levels of appeal. Only information that is contained within
this space on this form will be considered:

THE Body of THE disciplinary does not support
THE Charges. THE disciplinary Fail to list Any wrong
doing By mE. It is no Evidence of my Purchasing An
unAuthorised Items or Articles. Nor does it state
I did in THE Body of THE disciplinary. I wasn't Caught
moving money or Currency, not was Any found in my
Possession. THE Screen Shot refered to under Eviden
relied upon does not Belong to mE. I AM not Rkc1218
that App is not connected to mE And I AM not rE-
Sponsible. THE disciplinary only mentions my nAmE twi
once in THE Heading, And Again At THE VEry End whEr
it refers to mE AS THE HusbAnd of RAmonA CrockE

Inmate's Signature: Q. B. Crockett   Date: 09-23-21

**Original to be submitted for appeal; copies for inmate's use to proceed to next level if timely response not recieved.**

Exhibit 32/28

**ISSR100**

**Arkansas Department of Corrections**
Maximum Security Unit **Unit**
**MAJOR DISCIPLINARY**

If the C.S.O. determines that the violation(s) described on this document are felonious; he/she must hand carry this document to the Unit Warden who must immediately notify the Director.

**Inmate:** Crockett, Thomas E                    **ADC#:** 080478A                    **Assignment:** AM/PM:Barracks Porter

**Class:** I-C    **is being charged by**    Crater, Tabitha L                    **Title:** ADC/ACC Program Specialist
**with code violation(s):**

15-3  The purchase or exchange of unauthorized articles or authorized articles obtained through unauthorized channels.
09-4  Possession,OR movement,of money OR currency,unless specifically authorized

**Date & Time:** 09/16/2021        9:01 AM

**Notice of Charges:**

Incident Report Unit: Maximum Security Unit
Incident Report Date/Time: 09/21/2021/09:05:39 AM
Incident Report Number: 2021-09-071
Incident Report Comments By: Tabitha L Crater
On 9/16/21, at approximately 9:01a, I, Tabitha Crater (Admin Review Officer) was monitoring random phones and listened to a phone call in the Securus phone system of inmate Kendrix Heard #104326. While monitoring the phone calls, inmate Heard maked 3 calls to the 501-438-1932. This number (verified in eOmis) is assigned to Monica Ñichols who is on his approved contact list. During the 1st call Inmate Heard states to Ms. Nichols that "he needed to get these little things out the way" Ms. Nichols states "What things?' Inmate Heard states, "You know what I'm suppose to been doing, What I'm suppose to been got out the way!" Ms. She then states, "I thought everything was done. I thought that was the last of everything!" Inmate Heard then states, " Nah, that was the last of that App!.."During the call, he gives Ms. Nichols the name "Moneypower1200 and states you should see Teddy Jordan. Ms. Nichols asks "is it spelled certain way?' Inmate Heard states he said it did matter. Ms. Nichols spells out the name tag again and inmate Heard says "yeah that's' it." At that time Ms. Nichols stated that she saw it and inmate Heard tells her "1." He then goes to tell her the name "Mobboy1100" She asks "Is this a new one" and he states yes and you should see "Blackboy" pop up" Ms Nichols states I already got that one and how much is that supposed to be? Inmate Heard states "5." Inmate Heard then gives her a name "RKC1218 and Ms. Nichols asks "the other 5?" Inmate Heard says "ummm three five" At that time Ms. Nichols asked "three five??" Inmate Heard replies"Just gone do the other 5I was gone try to cut it short because I was gone put the other part on my books" Toward the end of the call, inmate Heard tells Ms. Nichols to go ahead and do the 5 on the RKC and that's the last of that and its out the way and you should see the name Ramona. Ms. Nichols says that it"s done and Inmate Heard asks all 3 of them and she says yes. On a 2nd at call at approx. 9:46am to 501-438-1932, inmate Heard states to Ms. Nichols that everything that he gave her this morning except "Moneypower" is over with. Inmate Heard has Ms. Nichols to then write the name "Elmstchucky" and spells it out for her. He stated to her "if she was doing anything for his food, to not worry about it & that he would just have to skip that because he forgot about dude right here." Ms. Nichols then states, 'Well I really wasn't doing but 2 because I'm trying to get my hair done & that I don't know what the other part is supposed to be." At that time Inmate Heard states "5 and if that 25 comes today you can just keep that & I'll owe you 25 more." She then asks "Is this somebody's app thing?" Inmate Heard responds "yeah." She then state "Well I'm gone have to tell you about next month because a whole bunch of shit is about to be shut down because I have a lot coming out.insurance and all kinds of stuff." She asks how to spell the name again because she couldn't find it. She asked was the "Chucky" spelled with a "Y" or an "IE." Inmate Heard stated with a "Y". He then told her to try a capital E and capital C. Ms. Nichols states "naw.. Inmate Heard can be heard tell her that ElmSt Chucky is 2 different words and that it is not all one word. She states that "I thought the words have to be connected" Inmate Heard states "No just Chucky.he didn't have a number like 1100 or 1200.like 083 on yours his don't have a number." Ms, Nichols states "ok that still aint pulling nothing up and all that has to be connected and can't be separated. It's not coming up so you're going to have to find out & the call ends. At approx 9:54am, on the 3rd call, inmate Heard makes the call again to 501-438-1932, Ms Monica Nichols. When Ms. Nichols answers, you can hear inmate Heard make the statement "I found it. It's lower caseeverything is lower case and it's "IE the E on Elem is capital. Everything after that is lower case and instead of Y at the end it IE" At that time Ms Nichols called a name "Drakease Hall." Inmate Heard then states "Baby you be doing to much..yeah yeah hold up hold up says thank you" The call ends. During an investigation, it was found that the names Mobboy1100, Moneypower1200, Rkc1218, & Elmstchuckie given by inmate Kendrix Heard #104326 were CashApp tags that is used for adding cash. Elmstchuckie belongs to inmate Drakease Hall #151761 and Rkc1218 belongs to Ramona Crockett (with picture). Ramona Crockett is the wife of inmate Thomas Crockett #080478 (verified in eOmis) Inmate Crockett knows that this violation is against ADC policy. So therefore I, Tabitha Crater, Admin. Review Officer, am charging inmate T Crockett #080478 with the following rule violation: 15-3, 9-4

(I affirm that the information in this report is true to the best of my knowledge)    Signature of Charging Officer

| NOTIFICATION: | Officer | | Date & Time Notified | 9/21/21    2:18p |

Witness Statements:        No  X        If yes, list:

**ISSR100**

**Arkansas Department of Corrections**
Maximum Security Unit **Unit**
**MAJOR DISCIPLINARY**

If the C.S.O. determines that the violation(s) described on this document are felonious; he/she must hand carry this document to the Unit Warden who must immediately notify the Director.

**Inmate:** Crockett, Thomas E          **ADC#:** 080478A          **Assignment: AM/PM:Barracks Porter**

Inmate's Signature

| **C.S.O. Review:** | **Outcome:** | Refer to Hearing Officer/Comm. | |
| | **By:** | Clark, Richard L | **Date** 09/21/2021 |

| **Extension:** | No X | Yes | **Has extension form been completed?** | |

Presentation by Counsel - Substitute is required when it is determined that the inmate is illiterate or incompetent or that the issues are extraordinarily complex.

**Counsel-Substitute:**   **Assigned (Name)**                              **Not Assigned**

Exhibit 4 2-28

**ISSR101**                                          **Arkansas Department of Correction**

### DISCIPLINARY HEARING ACTION

**Inmate:**    Crockett, Thomas E          **ADC#:**    080478A    **Unit:**    Maximum Security Unit

**Code Violation(s):**

15-3  The purchase or exchange of unauthorized articles or authorized articles obtained through unauthorized channels.
09-4  Possession,OR movement,of money OR currency,unless specifically authorized

**Date/Time of Alleged Offense(s):**    09/16/2021  9:01 AM

| **Hearing Date:** | 09/23/2021 | **Time:  Start** | 10:36 AM | | **End** | 10:41 AM |

**Recorder:**    Waddle, Keith L        **Tape#:**          **Side:**        **Meter:  From**            **To**

**Plea:**    Not Guilty, Not Guilty                              **Attendance Waived:**    No

                                                      **Has waiver form been completed?**_____

**Inmate's Statement:**

It does not state anything. She sells essential oils on line.

**Signature of Inmate**

**Court Questions:**

Do you have a statement?

**Sentencing Conditions:**

**Verdict:**    Guilty, Guilty

**Restriction Days to Serve**

| | | | |
|---|---|---|---|
| Commissary: | 60 | **Days Suspended:** | 0 |
| Phone: | 60 | **Days Suspended:** | 0 |
| Visitation: | 60 | **Days Suspended:** | 0 |
| Punitive Isolation Days to Serve: | 30 | **Days Suspended:** | 0 |
| GT Class Reduced to: | IV | **Class Suspended:** | |
| GT Days Forfeited: | 365 | **Days Suspended:** | 0 |

Disciplinary Hearing Action
09/23/2021   11:04 AM
Page 2

**Inmate:**   Crockett, Thomas E                **ADC#:**   080478A        **Unit:**   Maximum Security Unit

**Additional Sanctions/General Comments:**
Population.

**Factual Basis for Decision (This is a short synopsis of the facts as the Hearing Officer perceives them after reviewing all of the evidence.):**
Inmate exchanged money through unauthorized channels.

**Evidence Relied Upon:**

F-1 statement from charging officer.
Screen shots.

**Reasons Why Information Purporting to Exonerate Inmate was Discounted:**
Staff report is accepted.

**Reasons for Assessment of Punishment:**
Inmate is class IC but must not exchange money with anyone.

**I have read this report and understand that I may appeal to the Warden about any decision made in this matter within fifteen (15) working days by completing the "Disciplinary Appeal" form.**

**Inmate's Signature** _____          **Counsel-Substitute** _____

**I affirm that the information is true to the best of my knowledge.**

**Hearing Officer** _____          **Date** _____



**ARKANSAS DEPARTMENT OF CORRECTIONS**
**Division of Correction - Director's Office**

**6814 Princeton Pike**
**Pine Bluff, Arkansas 71602**
**Phone: (870) 267-6200 | Fax: (870) 267-6244**

### MEMORANDUM

**TO:**       **Inmate Thomas Crockett, ADC# 080478**
              **Maximum Security Unit**

**FROM:**     Dexter Payne, Director

**RE:**       **Major Disciplinary Appeal**

**DATE:**     **December 1, 2021**

Please be advised that I am in receipt of your disciplinary appeal regarding the major disciplinary you received 09/16/2021 at 9:01 a.m. by ARO Tabitha Carter.

You state in your appeal that the body of the disciplinary does not support the charges; it fails to list any wrongdoing by you; there's not any evidence of you purchasing unauthorized items or articles; and it doesn't state that you were caught moving money.

Your disciplinary states, "On 9/16/21, at approximately 9:01a, I, Tabitha Crater (Admin Review Officer) was monitoring random phones and listened to a phone call in the Securus phone system of inmate Kendrix Heard #104326. While monitoring the phone calls, inmate Heard maked 3 calls to the 501-438-1932. This number (verified in eOmis) is assigned to Monica Nichols who is on his approved contact list. During the 1st call Inmate Heard states to Ms. Nichols that "he needed to get these little things out the way" Ms. Nichols states "What things?' Inmate Heard states, "You know what I'm suppose to been doing, What I'm suppose to been got out the way!" Ms. She then states, "I thought everything was done. I thought that was the last of everything!" Inmate Heard then states, " Nah, that was the last of that App!.."During the call, he gives Ms. Nichols the name "Moneypower1200 and states you should see Teddy Jordan. Ms. Nichols asks "is it spelled certain way?' Inmate Heard states he said it did matter. Ms. Nichols spells out the name tag again and inmate Heard says "yeah that's' it". At that time Ms. Nichols stated that she saw it and inmate Heard tells her "1.". He then goes to tell her the name "Mobboy1100" She asks "Is this a new one" and he states yes and you should see "Blackboy" pop up" Ms Nichols states I already got that one and how much is that supposed to be? Inmate Heard states "5." Inmate Heard then gives her a name "RKC1218 and Ms. Nichols asks "the other 5?" Inmate Heard says "ummm three five" At that time Ms. Nichols asked "three five??" Inmate Heard replies"Just gone do the other 5I was gone try to cut it short because I was gone put the other part on my books" Toward the end of the call, inmate Heard tells Ms. Nichols to go ahead and do the 5 on the RKC and that's the last of that and its out the way and you should see the name Ramona. Ms. Nichols says that it"s done and Inmate Heard asks all 3 of them and she says yes. On a 2nd at call at approx. 9:46am to 501-438-1932, inmate Heard states to Ms. Nichols that everything that he gave her this morning except "Moneypower" is over with. Inmate Heard has Ms. Nichols to then write the name "Elmstchucky" and spells it out for her. He stated to her "if she was doing anything for his food, to not worry about it & that he would just have to skip that because he forgot about dude right here." Ms. Nichols then states, 'Well I really wasn't doing but 2 because I'm trying to get my hair done & that I don't know

what the other part is supposed to be." At that time Inmate Heard states "5 and if that 25 comes today you can just keep that & I'll owe you 25 more." She then asks "Is this somebody's app thing?" Inmate Heard responds "yeah." She then state "Well I'm gone have to tell you about next month because a whole bunch of shit is about to be shut down because I have a lot coming out.insurance and all kinds of stuff." She asks how to spell the name again because she couldn't find it. She asked was the "Chucky" spelled with a "Y" or an "IE." Inmate Heard stated with a "Y". He then told her to try a capital E and capital C. Ms. Nichols states "naw.. Inmate Heard can be heard tell her that ElmSt Chucky is 2 different words and that it is not all one word. She states that "I thought the words have to be connected" Inmate Heard states "No just Chucky.he didn't have a number like 1100 or 1200.like 083 on yours his don't have a number." Ms, Nichols states "ok that still aint pulling nothing up and all that has to be connected and can't be separated. It's not coming up so you're going to have to find out & the call ends. At approx 9:54am, on the 3rd call, inmate Heard makes the call again to 501-438-1932, Ms Monica Nichols. When Ms. Nichols answers, you can hear inmate Heard make the statement "I found it. It's lower caseeverything is lower case and it's "IE the E on Elem is capital. Everything after that is lower case and instead of Y at the end it IE" At that time Ms Nichols called a name "Drakease Hall." Inmate Heard then states "Baby you be doing to much..yeah yeah hold up hold up says thank you" The call ends. During an investigation, it was found that the names Mobboy1100, Moneypower1200, Rkc1218, & Elmstchuckie given by inmate Kendrix Heard #104326 were CashApp tags that is used for adding cash. Elmstchuckie belongs to inmate Drakease Hall #151761 and Rkc1218 belongs to Ramona Crockett (with picture). Ramona Crockett is the wife of inmate Thomas Crockett #080478 (verified in eOmis) Inmate Crockett knows that this violation is against ADC policy. So therefore I, Tabitha Crater, Admin. Review Officer, am charging inmate T Crockett #080478 with the following rule violation: 15-3, 9-4."

You stated during your disciplinary hearing, "It does not state anything. She sells essential oils online."

After a thorough review of all the documents pertaining to this matter, I am upholding the guilty verdicts of rule violations 15-3/The purchase, or exchange of unauthorized articles or authorized articles obtained through unauthorized channels and 09-4/Possession or movement of money or currency, unless specifically authorized; therefore, your request to reverse your disciplinary is denied.

DP/jl

cc: Warden / Inmate File / File

Thomas Crockett #80478          L

Maximum Security Unit
2501 State Farm Rd.
Tucker, AR 72168



United States District Court Clerk
600 W. Capitol   Room A-149
Little Rock, AR 72201



Legal Mail